Good morning. Graham Lipsmith here, along with Mary Beth Lipsmith for the plaintiffs in the case. May it please the Court. I'd like to reserve five minutes, if I may, for rebuttal, please. Please watch the clock. Thank you. I want to – there's a lot of briefing, a lot of case law in the record over – it's an early resolution of the case judgment, and there's a lot here to talk about, and so if there's any particular issues you'd like me to address, that's fine. I'll try to focus on what's not necessarily totally in the briefs, or just there's a little more refinement. So first, I'd like to talk about the difference between the 85Y and the 29Y warranties at issue in the case. This, to me, I think was the most egregious error by the trial court, because the court had resolved which of the two warranties applied under the circumstances in the case. Well, you contended it was the 29, right? In a Second Amendment complaint we did, we didn't know at the time about the 85Y warranty. By the time we got to the Third Amendment complaint, we revised the – Then it was the 85. Correct. So in the decision we're reviewing, the judge basically assumed it was the – he assumed it was either one, but it certainly assumed it was the 85, which was the one you wanted. The court actually assumed it was the 29Y warranty, and essentially bought the declaration by Mr. – I think it was Johnson was his name – from the Daikin Company, and didn't really evaluate whether she should be taking judicial notice of that declaration at that time. We did oppose that in the opposition to the motion to dismiss the – Didn't the judge also say that even if the 85Y warranty applied, it wouldn't change the result? I think that in part was on the privity issue, but not looking solely at the actual terms in the warranty language itself. The privity issue was the primary reason why she granted the motion with respect to the warranties. And in the 85Y warranty, the language is clear there that – Warranting to any owner. That's the stuff you're – Correct. Warranty to any owner. And I'd also submit that you can take that same language from that warranty to try to help define what owner means in 29Y as well, in terms of the company's policies and practices. And if they're in there, it's not even necessarily a third-party beneficiary. I think they're a direct beneficiary of the warranty in the 85Y warranty. Under 29Y, I think that there's a good argument to be made that they're also a third-party beneficiary because they're the one who's actually using the product for the duration of the warranty period. Why doesn't either warranty be subject to the four-year statute of limitations? We argued in the court below that the – both warranties were future performance warranties under the Cal Commercial Code 2725, subsection 2. And what that provision provides, essentially, is if the warranty provides for future performance during a duration of time, then the – and the case law has interpreted it – that the cause of action does not accrue until discovery of the problem, which can occur much later than – Doesn't that effectively make this a perpetual warranty, though? Well, it's the expressed language of the statute. It's also the Krieger decision in the California Court of Appeal that made that decision. And it said, you know, if there's a warranty out there and it prescribes something for a specific period of time in the future, then there is no other thing that can be than a future performances warranty. And I was also – Well, take 85Y. That was only warranted future performance for only one year after initial startup. So let's say, giving it a little bit of benefit, that the longest statute of limitations began to run, let's say, in September of 2011. And, of course, it would have been finished in September of 2015, which was before you filed. I have two points to make on that. One is that under the future performances exception, it does toll the statute of limitations until the period of discovery. And that's provided in the Krieger decision. So you're basically saying that if there was a defect and you've got one of these things that says that if it proves defective within 12 months, it doesn't really mean 12 months. If you don't discover it until eight years later, let's say, just pull a number out of the air, eight years later, you can still rely on the warranty. Yes, that's correct. And there's not been any citation in any case that provides otherwise by the appellees in this case. They cite to a treatise on product liability, but I don't see it having any more application. That's stronger than the Krieger decision in this case. Krieger is the case you're saying says that. Yes. I'd also like to point out to the panel something that the trial court had also. Was discovery made within the express warranty period here? So I thought Krieger allowed tolling when discovery was made within the express warranty period. My interpretation of Krieger is that it was discovery took place after the warranty period had expired, and it's the manifestation of the defect that occurred in the warranty period. But in Krieger, there was discovery made within the express warranty period, right? Yes, but that's not what the court actually grabbed onto as the reason for applying the future performance as an exception under California Commercial Code 2725, subsection 2. Okay. Taking a step back also is a very important issue that just was not addressed at all by the trial court, unfortunately, and that's the issue of the replacement coils. Both of these plaintiffs had bought new replacement coils. Did you argue that to the district court? Yes, we did. I don't know how much. A third amended complaint, was that argued? Yes, that's alleged in the third amended complaint. Let me see. I don't have that at my fingertips right now, but we do have a situation where we have alleged. So you don't know what paragraph that was in? No, I can take a look here, though. And did you allege was there a separate warranty for replacement coils, or are you arguing that there is an implied warranty, or what's your argument? Well, I think that goes back to this dispute between 29Y and 85Y. So was there a warranty? That's just my question, is whether there was a separate warranty on replacement coils. Our contention is it would fall under 29Y or 85Y, but it would be a separate and new warranty because it is a newly purchased product by the consumers in the case. Okay, and your clients were provided with a warranty? They were not provided with a warranty. Okay. And that's another big problem we identified in the constellation of items that happened to them, is that it was virtually impossible to even find any of the warranty documents that were out there. In fact, they didn't come out until the declaration was submitted by the defense in the case. So after, when you break, you can look at where it's alleged in the third amended complaint. Okay. Thanks. Thank you for giving me the time to do that. So in terms of replacement coils, it certainly would be timely. I know, at least in the fourth amended complaint, I'll look to see what we alleged in the third amended complaint. We did allege that the replacement coils were put into both of the plaintiff's units. For Ms. Ramos, I'm sorry, for Ms. Kim, it was installed on February 12th, 2016, and we did submit the invoice for that replacement coil that she had purchased. And for Ramos, we allege that after July 2015, the replacement coils were installed. I've later, since the case has been dismissed, actually pinned down that date, but I know that's not really in the record here for right now, but it is something we can allege the exact date that it was installed and the exact date that she saw that there were failures in the same product. I also would like to point out to the Court, focus the Court's attention in on the Right of Repair Act or the RORA Act, the California Right to Repair Act. Unfortunately, we were part of the Kohler decision. That was submitted by the defense. We did notify in our 28-J letter that the case had been argued before the California Court of Appeal. That decision is not yet final, but they've indicated that they're going to publish the decision. We do intend to file a petition for review at the end of this month on that issue. I think the very unfortunate reality of the Kohler decision is every court that's touched the RORA has described it as a Byzantine statute, and I think, unfortunately, the Kohler decision makes it even more Byzantine and difficult to understand. I think it also creates a very stark conflict with two prior cases that are decided by California, one in the Fourth District Court of Appeal and one by the Supreme Court, and those two cases are the Greystone case, which we cited in our papers, where the Court broadly held that the Right of Repair Act is applicable to manufacturers that are alleged to violate the standards in RORA, and in that one they were focusing on the 896 standards. At that point in time, subsection 897 had not yet been construed by anybody. Since then, the California Supreme Court in McMillan, which was a case that we urged the trial court to hold off making a ruling on until it was decided, but she declined to do so, McMillan made it very clear the exact argument that we had made in the trial court below, which was that 897 is a catch-all provision, so to the extent there's not a standard that's specifically set forth in 896, 897 is there so that you can allege that there are standards violated and there's a violation under the Act. Yeah, but what troubles me is that Dakin is the manufacturer of the product. It didn't install or provide heating, did it? Well, it depends on the way you look at it. They did not do the actual installation, and they didn't go in and turn on the machine. But isn't that what RORA covers? RORA covers that, but it also covers under 897, which is the broad catch-all. And did you say that the it shall be actionable if it causes damage phrase in 897 has been construed now by California courts? Do we know what that means? No, that has not been specific. Does that incorporate the economic loss doctrine, for example? No. Well, under Greystone, they did look at that, and what Greystone basically came down and said is that RORA largely has essentially supplanted the economic loss doctrine under the context of products that are installed in new construction. So what does 897 do? What does if it causes damage mean? Do we know? There's no case out there that actually construes if it causes damage. I would submit that under both McMillan and under the legislative intent of the Right of Repair Act, which it was intended to abrogate Oz, which was an economic loss doctrine case, to the extent that there is a violation of the standard, there's no economic loss doctrine that will apply, and we did allege that the defect in the product violated the standard under 897's catch-all provision. Do you want to save the rest of your time for rebuttal? I will. Thank you very much. Okay. May it please the Court, I'm Ted Grossman, and I'm here on behalf of Diken Applied. This is a protean appeal. Through five complaints in the district court, the district court judge, with great care and patience, gave the plaintiffs every opportunity to replead, instructing them in many cases how to replead. The repleadings never came. There were 13 claims that were alleged, and there were multiple grounds, at least three or four grounds for dismissing each of those 13 claims as time went by. Plaintiffs have appealed all of those rulings. So we have an appeal unlike any I've ever had in my fairly long career, in which there are about 40 separate rulings that have been appealed by the plaintiffs. And as to each of the 13 claims, the multiple grounds of dismissal were independent, and the plaintiffs must demonstrate that the court erred in each of those. Now, this is, as the appellant noted, this is one of two cases that these two plaintiffs have brought as purported class actions for manufactured products in the apartments that they bought in the EVO complex. One case, the Kohler case, involves plumbing valves. In this case, it involves air conditioners. Two cases have a few things in common, and both Rohrer claims were made. And the Kohler case is very instructive on the Rohrer matter. It says, first of all, that the 897 catch-all provision doesn't apply to manufactured products. Second, that the 897 provision applies only to damages and not to claims that the product went bad. And third, that the Rohrer provisions cannot be used as a basis of a class action. In this case, I think with so many different claims that have been stated and so many different grounds of appeal, it's worthwhile to note certain overriding points. The first is the plaintiffs didn't buy air conditioners. They bought apartments. And there is no allegation, although they were given multiple opportunities, to say that there was any part of the air conditioners that played into the purchase decisions by the plaintiffs in buying their apartments. They didn't review any Daikin literature. They didn't look for Daikin literature. There's no allegation that they even knew what the air conditioners were. There's none. And as to those claims that require reliance, that negates reliance entirely. That's true of the express warranty claim and of the statutory claim for unfair competition and consumer legal services. There's no reliance, and there can be no inference of reliance or presumption of reliance, when the plaintiffs have made no allegation whatsoever that the air conditioners played a role in their purchase decision for the apartments. So can I ask you about the Rora claims? Because I don't think reliance is really part of those, right? I agree. So I'm looking really at one subsection. It's not the one about heating. It's the one about living space air conditioning, which is 896, I think G5, something like that. Mm-hmm. Living space air conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in the title of the California Code of Regs. Am I right? There's no California case that says whether shall be provided, quote, unquote, just talks about installers or also talks about manufacturers, right? That's correct, Your Honor. What is it about that language? I mean, I get the argument when it relates to G4 when it says heating shall be installed. I get the argument. I'm not sure I agree with it, but I get it. On the shall be provided, I'm not getting exactly how it is that we can tell from that that it doesn't apply to the manufacturing of the product itself. First of all, when the statute, which contains multiple parts, wants to set up, in essence, strict liability, it does so by clear language, as the Greystone decision noted. For example, it says- Plumbing can't fail or whatever the- Shall not leak. Right. Shall not corrode for sewer lines. But in other cases, showers, baths, and related waterproofing shall not leak. But in other cases, it has language that is limiting. And the language of subsection 5 is clearly limiting because it says living space air conditioning, if any. And I would note that in comparison with heating, it doesn't specify a standard. If any, right. And not only if any- It relies on a standard, though, and I don't know what these- I don't think anybody's talked about what the size and efficiency criteria in Title 24 are. When air conditioners are placed in apartments or houses, they need to be sized to be properly efficient. If too small an air conditioner is put in, it runs with too much electricity. And so this relates to the amount of electricity that the tenant or the owner would have to pay for in order to cool their apartment. And I'd note also that subsection 3A, which says to the extent not otherwise covered by these standards, manufactured products including but not limited to, and it lists HVAC units- Right. Shall be installed so as not to interfere with the product's useful life, if any, and in subsection- Well, that's clearly about installation. Yeah, and subsection B below that notes that the useful life is how long the product is warranted. Let me just ask you, let me just ask you, was there any- And again, I don't know that anybody's argued about this. Was there any allegation or let's say argument in the plaintiff's briefs in the district court that the air conditioning wasn't consistent with the size and efficiency design criteria in Title 24 of the California Code of Regulations? Two answers to that. First, the answer is no. No. And secondly, the Daikin was not responsible for sizing the unit. It had no role in that. That's what the contractor does, basically. Yeah, it was purely the manufacturer. Second, if I could turn to the warranty issues in a number of ways. If I understand counsel- Yes. Warranties are no longer effective in California. Is that a fair assessment? Oh, no, not at all. Not at all. Warranties are effective by their terms. Warranties are contracts. This warranty was issued, whether it was the 85 or the 29, makes no difference for these purposes. They're 12-month warranties from the date of installation or 18 months from the date of shipment, whichever occurred first. In this case, the units were manufactured, as alleged by the plaintiffs, in 2006. And the apartments were opened to the public in 2008. Ms. Ramos purchased hers in 2009, Ms. Park Kim in 2010. The warranty in either case is established by contract. And the contract was between the developer and Daikin, or the installer and Daikin, not between either of these plaintiffs and Daikin. And even if they're third-party beneficiaries, they have no more rights than the party that received the warranty. A couple of things on that. First of all, plaintiffs argue throughout their briefs that the warranty was hidden. What they're saying is plaintiffs' counsel wasn't able to find it on the Internet. There's no suggestion that the developer wasn't given the warranty, that the party that contracted for the warranty didn't receive it. There's no allegation of that whatsoever. And there is no allegation or argument that California law requires warranties, which are private contracts, to be posted on the Internet. Well, do you want to address the replacement coils? Certainly, Your Honor. Replacement coils are damages. Years after these air conditioners were manufactured and installed and started up and run, parts of them allegedly corroded. The evaporator coils allegedly corroded and failed. This is years later. And it goes to the point that Judge O'Scanlan made about a perpetual warranty, a very good point. Years later, and the plaintiffs, rather than making a warranty claim, which they did not do and which is necessary under the contract in order to have a warranty claim that could go to court, rather than make a warranty claim, had to repair. And one of the two put one in a replacement coil. The other one has not alleged that she did so. That replacement coil would be an element of damages if there were any damages, economic damages to her and nothing more. To allege that there is some warranty claim based on that coil is specious. First of all, because that coil hasn't failed. There's no allegation that the replacement coil has failed. And secondly, that doesn't revive a claim from years before that was extinguished with time. The replacement coil issue is a red herring. Counsel, what's your response to counsel's citation of Krieger and his interpretation of Krieger? Thank you, Your Honor. I was hoping to come to that. The Corzine case in which plaintiff's counsel was counsel noted that Corzine, the claim arose in Corzine during the course of the warranty. The question on warranty is when did the cause of action arise? The cause of action for a warranty arises when there is a failure within the warranty period and the plaintiff makes a claim as required by the contract, by the warranty, and the manufacturer or the party that gave the warranty fails to comply with the warranty terms. That's exactly what happened in Krieger. During the course of the warranty term, the car owner made a warranty claim and BMW failed to make the repair necessary under the warranty. Corzine case that plaintiff's counsel was a party in held and Krieger itself holds that the claim must arise, implicitly must arise during the warranty period because there's no cause of action on which to bring a claim and no cause of action on which the statute of limitations may run if the warranty has already been extinguished. As has been pointed out, to accept plaintiff's position would be to say that there is no limitation on warranties when there is a warranty that can be characterized as being for future performance. With so protean an appeal, I'd like to address the court's questions if there are any others. I see that my time is running out. Apparently not. Okay. I appreciate it very much, Your Honor. Thank you. Thank you. Thank you. Thank you for the moment to look through the third amended complaint. We did allege that the replacement coils were at issue in the third amended complaint. It's at ER-299, ER-309, and ER-311, respectively paragraph 7, paragraph 43, and paragraph 53 of the third amended complaint. With respect to 897, the argument we made below was that to the extent something's not listed. Wait a second. I'm looking at paragraph 53. Paragraph 53, the allegation about the replacement coils is that because of the defective coil, in other words the first one, she had to replace it. So that's kind of consistent with what defense counsel said about it was really part of your damages, not a separate claim. Right. But if you look up at 48, the last part talks about purchasing replacement dyke and coils that are also defective and will need replacing. But there's no allegation that your client's replacement coils were defective. Is there an allegation that your client's replacement coils were defective? I think that's it. That's where we basically say that they had to purchase replacement dyke and coils that are also defective and will need replacing. And if you look at paragraph 7 as well. So it's an allusion to your dissatisfaction as opposed to an actual claim, is that? No. Here it says the brand new dyke and coils have the same composition fabrication method of fabrication and morphology of the copper tubing interior and are therefore also defective. Maybe I've lost the thread here. But if what you're saying is that you can make a claim based off the replacement coils, it would seem to me that to trigger that there would have had to have been a failure of them and there's no allegation about that of the particular plaintiff's replacement coils. Maybe I'm missing the point though. We did allege that they are defective and I don't think you have to wait for a failure before you can pursue a defect claim. And I would like to turn back to 897, the catch-all provision. What it says is the standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage. And I think here there's a lot up in the air about RORA right now, both with the California Supreme Court and these two, I think, opposing decisions out of Greystone and the Kohler decision, and I would request that the court certify the issue for the Supreme Court to decide on the limited scope of the RORA claim. And then very lastly, very quickly, we actually did allege that there were violations of the sizing and efficiency standards. That was in the Fourth Amendment complaint at paragraphs 61 through 65, which is ER 134 through 135. And it's actually the second cause of action in our Fourth Amendment complaint, which is at ER 144 through 146. And the gist of that is that they can't meet the efficiency standards because all of the refrigerant is escaping from them, so they just run heat and blow hot air. Okay. We thank both parties for their argument. And the case of Park, Kim, and Ramos v. Dakin Applied Americas is submitted.
judges: O'scannlain, Ikuta, Kennelly